IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In re: Jacob Fraidin            * Case No. 92-5-2338-JS
                                *
*   *   *   *   *   *   *
                                *
ANDRE' R. WEITZMAN              *
                                *
v.                              * Civil Action No. WMN-00-3064
                                *
NEVETT STEELE, JR., P.A.        *
                                *

**MEMORANDUM**

This is an appeal from a decision of the United States Bankruptcy Court for the District of Maryland, approving the employment of Appellee Nevett Steele, Jr., P.A. as Special Counsel to Chapter 11 Debtor Jacob Fraidin, and approving the application for the allowance of an administrative expense priority claim in favor of Nevett Steele in the amount of $107,750.50 in compensation and $3,701.10 in expenses, less $33,886.00 in monies already paid. See Bankruptcy Order dated Sept. 11, 2000.

**I. BACKGROUND**

Appellant Andre Weitzman represented, under a contingency fee agreement, Ray and Margarette Dorman (the "Dormans") in an action against Mr. Fraidin and his two companies North American

---

[1]Mr. Weitzman began his representation of the Dormans when he was a member of the firm of Braiterman & Johnson, P.A. In April 1995, Mr. Weitzman started his own firm and the Dormans followed him. See Fraidin v. Weitzman, 93 Md. App. 168, 177 (1992), cert. denied, 329 Md. 109 (1993).

Credit Corporation, and Pacific Mortgage and Investment Group, Ltd. (the "Companies"). See Fraidin v. Weitzman, 93 Md. App. 168, 176 (1992), cert. denied, 329 Md. 109 (1993). On September 23, 1985, a jury awarded the Dormans $366,949.86 in compensatory and punitive damages, plus interest and costs. Id. at 177. Mr. Fraidin eventually reached a settlement with the Dormans regarding the payment of the damages award. Id. at 184. As part of the settlement, Mr. Fraidin required that the Dormans discharge Mr. Weitzman and Sheldon Braiterman[2] as their attorneys. Id.

To recover the fees due them, Mr. Weitzman and Mr. Braiterman brought suit in state court against the Dormans, Mr. Fraidin, the Companies, and various attorneys who had represented Mr. Fraidin and/or the Companies. The suit alleged numerous causes of action, including breach of contract and tortious interference with contract. Id. at 177-78. After the first trial ended in a mistrial, a second trial was commenced on September 18, 1990. The result of this trial was a jury verdict in favor of Mr. Braiterman and Mr. Weitzman and against the Dormans, Mr. Fraidin, and the Companies. Mr. Braiterman and Mr. Weitzman were awarded compensatory damages of $12,500 each on the breach of contract claim and $91,737.47 each on the tortious

---

[2]Mr. Braiterman was to receive a portion of the award due to Mr. Weitzman's prior employment with Braiterman & Johnson, P.A.

interference claim. These awards were "plus interest." In addition, punitive damages were assessed against Mr. Fraidin and the Companies in the amount of $500,000 as to Mr. Braiterman and $2,500,000 as to Mr. Weitzman. <u>Id.</u> at 178.

On July 5, 1991, Mr. Fraidin entered an agreement with Mr. Steele under which he and his firm was to handle the appeal of that award for a "flat fee" of $25,000 plus expenses. <u>See</u> July 5, 1991 Agreement. Shortly thereafter, on August 9, 1991, Mr. Fraidin filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Columbia. Mr. Fraidin was permitted, at least initially, to manage the bankruptcy estate as debtor-in-possession. In order to pursue the appeal of the state case, Mr. Fraidin moved, on August 30, 1991, for relief from the automatic stay in the bankruptcy proceedings. This relief was granted on September 27, 1991, by Judge S. Martin Teel, Jr.

Meanwhile, on September 5, 1991, Mr. Fraidin, through his bankruptcy counsel, Janet Nesse ("Ms. Nesse"), filed an application to retain Mr. Steele and his firm as special counsel pursuant to 11 U.S.C. § 327(e). The request was denied by Judge Teel on September 24, 1991, on the ground that the accompanying affidavit, which was signed by Mr. Steele, was insufficient because it lacked language indicating that it was signed under penalty of perjury. <u>See</u> Oct. 31, 1994 Hearing Transcript at 96. Mr. Steele received notification that the application for

employment was denied.  The notification was forwarded to Ms. Nesse, who failed to take any subsequent action to secure approval of Nevett Steele's employment.[3]

The bankruptcy case was transferred to the United States Bankruptcy Court for the District of Maryland on March 27, 1992. On August 4, 1992, Mr. Steele filed, on behalf of his firm, a section 330(a) application for payment of professional services and fees.  The application sought approval of $107,750.50 in compensation and $3,701.10 in expenses, as well as payment of those same amounts less the $33,886.00 in monies already paid. The Bankruptcy Court, without ever having approved the firm's employment as special counsel, approved the fee application on September 23, 1992.

On October 2, 1992, Mr. Fraidin moved to vacate and set aside the Bankruptcy Court's order entered September 23, 1992. On October 31, 1994, a hearing was held on this motion.  The hearing was continued to April 11, 1995, at which time the bankruptcy was converted to a case under Chapter 7 of the Bankruptcy Code.  See April 11, 1995 Hearing Transcript at 48. The pending motions then sat idle for almost five years until March 24, 2000, when Mr. Steele filed an application for allowance of administrative expense priority claim and request

---

[3]No explanation for this failure has been provided by any party in any of the proceedings.

that employment be approved <u>nunc pro tunc</u>[4] to August 9, 1991. During April 2000, objections were filed by the Chapter 7 Trustee Michael Rinn, Mr. Fraidin, and Mr. Weitzman.

A hearing was held on September 11, 2000, at which Mr. Weitzman did not appear.[5] At the hearing, Bankruptcy Judge James F. Schneider issued an order approving Mr. Steele's firm's employment <u>nunc pro tunc</u>, approving the application for fees and expenses, and allowing the administrative expense priority claim.[6] In support of his decision, Judge Schneider stated that: the employment application would have been approved had it ever been filed in this Court, as opposed to the D.C. Bankruptcy Court; that the application was not filed "partly because counsel for Mr. Fraidin failed to do so"; that it was "no fault of Mr. Steele's that details not followed through";[7] and, that Mr.

---

[4]Courts in the past commonly used the term <u>nunc pro tunc</u>, as did the Bankruptcy Court in this case. More recently, however, courts have acknowledged that the more appropriate term is "<u>post facto</u>" or "retroactive" approval. <u>See</u> <u>In re Albrecht</u>, 233 F.3d 1258, 1260 n.4 (10th Cir. 2000); <u>In re Music Store</u>, 241 B.R. 752, 754 n.3 (Bankr. N.D. Okla. 1999).

[5]Mr. Weitzman allegedly had a last minute scheduling conflict. <u>See</u> Sept. 11, 2000 Hearing Transcript at 8.

[6]Because the work was performed for the Chapter 11 case prior to conversion to Chapter 7, the claim was permitted as a second priority administrative claim, subordinate to any Chapter 7 administrative expense priority claims.

[7]The basis for this conclusion seems to be Mr. Steele's testimony at the October 31, 1994 hearing that he was a novice in bankruptcy law, that he relied upon Ms. Nesse to ensure that the employment application was approved, and that Ms. Nesse had provided assurances that she would rectify the problems with the

5

Steele's actions were made in good faith and resulted in a benefit to both Mr. Fraidin individually and Mr. Fraidin's bankruptcy estate.[8]

Mr. Weitzman timely filed a notice of appeal on September 21, 2000. The issues on appeal are: (1) whether the bankruptcy court erred in approving the application for employment as special counsel <u>nunc pro tunc</u> under section 327(e); (2) whether the bankruptcy court erred in approving the application authorizing an administrative priority claim for fees and expenses under section 330 and, relatedly, whether the fees and expenses charged are reasonable.

## II. STANDARD OF REVIEW

Findings of fact made by the bankruptcy court "shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. A finding of fact is clearly erroneous "only when the reviewing court is left with the definite and firm conviction that a mistake has been committed." <u>In the matter of Broyles</u>, 55 F.3d 980, 983 (4th Cir. 1995) (citations omitted). Conclusions of law are reviewed <u>de novo</u>. <u>In re Bulldog Trucking, Inc.</u>, 147 F.3d

---

denial of the application. Sept. 11, 2000 Hearing Transcript at 5.

[8] Because punitive damage awards are nondischargeable, low priority claims, <u>see</u> 11 U.S.C. § 726(a)(4), Mr. Fraidin, individually, and not the bankruptcy estate, benefitted from the reduction in the punitive damage award. The benefit to the bankruptcy estate is minimal and comes from the prejudgment interest on the compensatory damage awards being stricken. <u>See</u> 11 U.S.C. § 726(a)(2)-(3).

347, 351 (4th Cir. 1998).  The denial of an application for professional employment is reviewed under an abuse of discretion standard.  <u>In re Interwest Business Equipment, Inc.</u>, 23 F.3d 311, 315 (10th Cir. 1994) (citing <u>In re Harold & Williams Dev. Co.</u>, 977 F.2d 906, 909-10 & n.2 (4th Cir. 1992)).

**III. DISCUSSION**

   **A. Issues on Appeal**

Preliminarily, Appellee asserts that the only issue properly before this Court on appeal is that of the amount of the claim. According to Appellee, two of the issues, i.e., whether the application should be approved <u>post facto</u> and whether the estate benefitted, while addressed below, were not raised by Mr. Weitzman in the bankruptcy court and, therefore, cannot be raised by him on appeal.  As to the issue of disgorgement, Appellee contends that the issue was also not raised or argued below.  Mr. Weitzman refutes this contention and asserts that the issues were raised and preserved below.  Alternatively, Mr. Weitzman argues that, even if unpreserved, this Court has discretion to hear the issues.

Appellee relies on the case of <u>In re Jones</u>, 71 B.R. 682 (S.D. Ill. 1987) in support of its assertion.  In <u>Jones</u>, the district court held that "[a]n issue not presented in the court below cannot be raised for the first time on appeal and form a basis for reversal."  <u>Id.</u> at 685 (citing <u>Country Fairways, Inc. v. Mottaz</u>, 539 F.2d 637, 642 (7th Cir. 1976)).  What Appellee

fails to recognize is that the issues, with the exception of disgorgement, are not raised here for the first time. The issues were raised, and argued, in the bankruptcy proceedings, and the bankruptcy record is fully developed as to these issues. Furthermore, Mr. Weitzman has properly included them, or they may be inferred from, his statement of issues for appeal. Therefore, the Court, in its discretion, will address the issues of <u>post facto</u> approval of the application for employment and benefit to the bankruptcy estate, but not the issue of disgorgement. <u>See</u> <u>In the Matter of Pizza of Hawaii, Inc.</u>, 761 F.2d 1374, 1379 (9th Cir. 1985) (finding that any issue presented by the record is properly before the district court on appeal); <u>In re Winders</u>, 202 B.R. 512, 517 (D. Kan. 1996) (commenting that issues are valid on appeal if presented in statement of issues for appeal, were inferable from issues properly listed on appeal, and were raised with the bankruptcy court).

### B. Appellee's Application for Employment as Special Counsel

Section 327(e) provides that "[t]he trustee,[9] with the court's approval, may employ, for a specified special purpose ... an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate . . .

---

[9]A debtor-in-possession has the same responsibility to seek court permission to employ special counsel. <u>See</u> 11 U.S.C. §1107(a).

..." While such permission is usually sought prior to the employment of special counsel, it may also be granted retroactively provided some sort of special circumstances are shown. See In the Matter of Arkansas Co. Inc., 798 F.2d 645, 650 (3rd Cir. 1986) (finding that, absent special circumstances, the retroactive approval would "reward laxity by counsel and might encourage circumvention of the statutory requirement"). There is, however, no consensus among the circuits as to what "special circumstances" are sufficient to warrant retroactive approval. See In re Jarvis, 53 F.3d 416, 420 (3rd Cir. 1995) (stating that retroactive approval is warranted only upon a showing of "extraordinary circumstances," which includes an analysis of who bore the responsibility for applying for approval, the time constraints involved, the amount of delay after the applicant learned the initial approval had not been granted, and the extent to which compensation to the applicant will prejudice innocent third parties); In re Atkins, 69 F.3d 970, 974 (9th Cir. 1995) (holding that retroactive approval is appropriate where there is a satisfactory explanation of the failure to receive prior judicial approval and it has been demonstrated that the services benefitted the bankrupt estate in a significant manner); In the Matter of Singson, 41 F.3d 316, 319-20 (7th Cir. 1994) (adopting a more lenient test of "excusable neglect"). The Fourth Circuit has not adopted or established any test for retroactive appointment. See The Binswanger Companies v. Merry-Go-Round

Ent., Inc., 258 B.R. 608, 612 n.1 (D. Md. 2000).[10]

There is no dispute that Appellee meets the statutory requirements of section 327(e) as it was both qualified and disinterested. See Appellant Brief at 14 (admitting that Mr. Steele is "an experienced attorney"); April 11, 1995 Hearing Transcript at 45 and Sept. 11, 2000 Hearing Transcript at 11 (inference that Nevett Steele met the section 327(e) requirements from Judge Schneider's statement that the application, had it been filed in his Court, would have been approved). Judge Schneider also found that Appellee's services benefitted the bankruptcy estate by virtue of the prejudgment interest being stricken. See Sept. 11, 2000 Hearing Transcript at 11. Additionally, looking at the services at the time the application was originally filed, there was the possibility that the appeal could have resulted in the elimination of or reduction in the compensatory damage award itself.[11] See Fraidin, 93 Md. App. at 186 (issues on appeal included whether tortious interference claim could stand and whether compensatory damage award restricted to fifty percent of the settlement amount).

---

[10] The result may have been different had the Fourth Circuit adopted a test such as the "extraordinary circumstances" test used in the Third Circuit.

[11] At the time the employment approval is sought, the Court looks at the benefits that may result. Later, in determining whether to award compensation pursuant to section 330, the court must take a "second look" for a determination of the actual benefit-to-the-estate. In re Engel, 124 F.3d 567, 571 (3d Cir. 1997).

Having been satisfied that Appellee's employment met the section 327(e) requirements, Judge Schneider next found that Mr. Steele had proffered a satisfactory explanation for the failure to obtain prior judicial approval of his firm's employment. Mr. Steele was not the party responsible for obtaining the prior approval. This task fell on the shoulders of Mr. Fraidin's bankruptcy counsel, Ms. Nesse, who has offered no explanation for her failure to correct the defect in the original application. Ms. Nesse also has not refuted Mr. Steele's assertions that she assured him that the defect would be corrected. This is not a case where Mr. Steele simply neglected his duty to obtain court approval. Rather, it is a case where Mr. Steele reasonably relied on Ms. Nesse's assurances that his timely application would be approved. Therefore, as aptly stated by Judge Schneider, it is unconscionable for Mr. Fraidin and Ms. Nesse to hire counsel who is unfamiliar with bankruptcy practice, tell them to "go ahead and do all this work," and then "come back some two or three years later and say, you didn't get an application." Oct. 31, 1994 Hearing Transcript at 100. The fact that Mr. Fraidin, through Ms. Nesse, later challenged the very application they were responsible for having approved leads to the reasonable inference that the failure to correct the defect with the application and obtain court approval was more than mere oversight or inadvertence. See In re El Paso Refinery, LP, 155 B.R. 418, 421 (Bankr. W.D. Tex. 1993) ("It would be unjust and

improper to penalize [consultant] for the failure of [debtor's counsel] to perform their duties.").

Additional credible reasons were available to Judge Schneider to explain the length of Mr. Steele's delay in filing a new application after he had learned that the initial application had been denied. Mr. Steele testified that he forwarded the denial to Ms. Nesse and that he believed she would correct the problem. At no time subsequent thereto did Ms. Nesse inform Mr. Steele that the approval had not been obtained or that he would have to take any steps to correct the defect in the application. Furthermore, when Judge Schneider approved Nevett Steele's August 4, 1992 application for payment of professional services and fees, it was reasonable for Mr. Steele to believe either that his firm's employment application had, finally, been approved or that obtaining approval was no longer necessary. Mr. Steele did not learn otherwise until shortly before the October 31, 1994 hearing. <u>See</u> Oct. 31, 1994 Hearing Transcript at 22. Thereafter, on December 15, 1994, Mr. Steele filed a supplemental application for authority to act as special counsel.

For the foregoing reasons, the Court concludes that Judge Schneider did not abuse his discretion in granting <u>post facto</u> approval of Nevett Steele's application for employment as special counsel to debtor, Mr. Fraidin.

### C. Application for Administrative Priority Claim and Fees

Obtaining approval for appointment as special counsel is the

first step in a two-step process regarding payment for fees and expenses. The second step requires court approval for the requested amount under section 330(a), which provides:

> (1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a . . . professional person employed under section 327 or 1103 -
>
> (A) reasonable compensation for actual, necessary services rendered by the . . . professional person . . . and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.
>
> . . .
>
> (4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for -
>
> . . .
>
> (ii) services that were not -
>
> (I) reasonably likely to benefit the debtor's estate . . . .

11 U.S.C. § 330(a).

In order for a bankruptcy court to approve payment of compensation under section 330, there must be a finding that the bankrupt estate benefitted from the services provided. See In re Robbins, 151 B.R. 364, 365 (Bankr. W.D. Va. 1993). Appellee claims that the bankruptcy estate benefitted by the overturning of the punitive damage award and the savings to the estate of approximately $100,000 in pre-judgment interest on the compensatory damage award. See Appellee Brief at 2. This claim

is, however, overstated.

A reduction in the punitive damage award does not benefit the estate for two reasons. First, it is a low priority claim that is paid only after all other claims, including the claims of nonpriority unsecured creditors, have been paid. See 11 U.S.C. § 726. Second, punitive damages are nondischargeable under section 523(a)(6). Therefore, a reduction of the punitive damage award benefitted Mr. Fraidin individually, but not the bankruptcy estate. See In re Lilliston, 127 B.R. 119, 121 (Bankr. D. Md. 1991) ("Where professional services are performed which benefit only the debtor personally, the debtor, not the estate, is liable for payment of the services."). This leaves as the only benefit to the estate the striking of the prejudgment interest, which Appellee values at approximately $100,000. See Appellee Brief at 2.

As the benefit to the bankruptcy estate was minimal, Judge Schneider clearly abused his discretion in awarding a priority interest for the payment of fees in excess of the amount in which the estate actually benefitted. This is particularly true given that the bulk of the fees sought by Appellee were to compensate it for services rendered to obtain a reduction in the punitive damage award, which was the thrust of the appeal in the state case and which did not benefit the bankruptcy estate.

This leaves the question of the proper amount of fees, if any, to award Appellee. At the heart of this question is Judge

14

Schneider's ruling that the July 5, 1991 Agreement between Appellee and Mr. Fraidin did not call for payment of a flat fee in the amount of $25,000 for the firm's handling of the initial appeal of the state case. This Court finds that ruling to be clearly erroneous.

The July 5, 1991, Agreement states that

> Nevett Steele, Jr., P.A. and Nevett Steele, Jr., upon receipt of the total sum of Twenty Five Thousand Dollars ($25,000.00) in advance SHALL IMMEDIATELY RE-ENTER THEIR APPEARANCE IN THE COURT OF SPECIAL APPEALS CASE, PHC #278, FRAIDIN V. WEITZMAN, AND FULLY PROSECUTE THE APPEAL . . . . This representation shall include the preparation and arguing of motions for reduction of bond for stay pending appeal . . . and the preparation and filing of briefs and appendix and the argument before the Court of Special Appeals. It shall not include matters after the decision of the Court of Special Appeals . . . .

July 5, 1991 Agreement at ¶ A. There is no provision for the renegotiation of fees if the appeal becomes more complicated than originally anticipated. There is also no provision providing for the payment of additional fees if and when the "retainer" is exhausted. This is in contrast to the sections of the Agreement regarding expenses and costs, as well as the Agreement's treatment of subsequent appeals. See id. at ¶ F (requiring Mr. Fraidin to pay for all printing and court costs in the appeal as well as for other expenses); id. at ¶ B ("If it becomes necessary to seek review in a higher court . . . [the parties] shall negotiate for further representation at that point.").

In addition, at no time subsequent to the entering of this

written Agreement did the parties agree to any modifications or amendments to the Agreement. The Bankruptcy Court spends considerable time attempting to determine whether Mr. Fraidin or Mr. Steele drafted the Agreement. That, however, is irrelevant, as the Agreement is not ambiguous as to the amount of fees to be paid and, regardless of who drafted the Agreement, Mr. Steele consented to its terms by signing the Agreement. Mr. Steele is a seasoned attorney with over twenty years of practice. Had he intended the Agreement to embody something other than it did, he should have made the necessary changes or refused to sign it. He did neither.

Further evidence that the parties intended Nevett Steele to receive a flat fee of $25,000, plus costs and expenses, is found in Mr. Steele's own August 4, 1992 Request for Payment. In this request, Mr. Steele indicates that the Agreement was for a flat fee of $25,000. See Aug. 4, 1992 Request for Payment at ¶ 2 ("In a July 5, 1991 written agreement, Nevett Steele, Jr., P.A. . . . and Nevett Steele, Jr. agreed to represent Jacob Fraidin and two of his companies in the appeal of <u>Jacob Fraidin, et al. v. Andre R. Weitzman, et al.</u> in the Court of Special Appeals . . . for a sum of twenty-five thousand dollars ($25,000), plus expenses . . . and court costs."). In the request Mr. Steele states that he had a copy of the application for employment, which also represents to the Bankruptcy Court that Nevett Steele was to receive a flat fee of $25,000 for its services. See <u>id.</u> at ¶ 3;

16

Application to Retain Firm of Nevett Steele, Jr., P.A. as Special Counsel at ¶ 5. Mr. Steele, in the request, asserts that additional fees are needed as the parties did not foresee the complexity of the appeal. See id. at ¶ 6. While this may be true, Mr. Steele did not make any attempt to timely notify the Court that the prior representations regarding his firm's fee were no longer true, even though this information was available to him, at the latest, in January, 1992. See Billing Statement dated Jan. 8, 1992. In addition, as previously, discussed, Mr. Steele did not obtain anything in writing from Mr. Fraidin regarding a new arrangement for the payment of his fees.[12]

Further evidence that the Agreement contemplated a flat fee comes from Mr. Steele's actions. Mr. Steele testified at the October 31, 1994 hearing that, upon receipt of the $25,000, he put the entire amount into his operating account and used the funds to pay bills. See October 31, 1994 Hearing Transcript at 63. These actions indicate that Mr. Steele believed the entire $25,000 to be earned when paid, as would be the case with a flat fee or engagement retainer. See In re Printing Dimensions, Inc.,

---

[12] Mr. Steele makes much of the fact that Mr. Fraidin paid an additional $7,500 in legal fees. According to Mr. Steele, this indicates that the Agreement was modified. Mr. Steele, however, has provided no tangible evidence indicating a willingness on the part of both parties to modify the terms of the Agreement. The payment could as easily be attributed to Mr. Fraidin's desire to appease Mr. Steele immediately prior to the hearing in the appeal. In any event, there is no written documentation to substantiate that Mr. Fraidin agreed to pay anything other than the $25,000 plus costs and expenses required under the Agreement.

153 B.R. 715, 722 (Bankr. D. Md. 1993). In contrast, had this simply been an advance fee retainer, Mr. Steele would have been required to put the funds in a separate account and draw upon them only as they were actually earned, see Maryland Rules of Prof'l Conduct 1.15, which, according to Nevett Steele's billing statements, was not until well after the payment was made in July 1991. See Billing Statements dated Dec. 16, 1991, and Jan. 8, 1992.

Because the $25,000 was paid pre-petition, was earned immediately, and was paid for services that did, albeit minimally, benefit the bankruptcy estate, this Courts finds that this portion of the fees approved by Judge Schneider was not an abuse of discretion. In addition, $3,701.10 in expenses and costs were properly payable pursuant to the Agreement. Of this amount, $1,386.00 was paid on February 13, 1992. See Billing Statement dated Feb. 19, 1992. The remaining portion, $2,351.10, of the expenses and costs will be credited against the $7,500 payment improperly made by, or on behalf of, Mr. Fraidin on April 2, 1991, with the excess amount of $5,184.90 to be repaid to the bankruptcy estate by Appellee.

A separate order consistent with this memorandum will issue.

_____
William M. Nickerson
United States District Judge

Dated: May 15, 2001